UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **BETHANY DASSINGER** | **CIVIL ACTION NO.:** |
| **VERSUS** | **JUDGE** |
| **LAFAYETTE CONSOLIDATED GOVERNMENT, LAFAYETTE PARISH SHERIFF'S OFFICE, SHERIFF MARK GARBER, BRENNAN MILLER, and MICHAEL HIATT** | **MAGISTRATE JUDGE** |

## ORIGINAL COMPLAINT

### PARTIES

1.     Plaintiff, Bethany Dassinger("Ms. Dassinger"), is an individual of the full age of majority and a domiciliary of the Parish of Lafayette and of the State of Louisiana. Ms. Dassinger is a citizen of the United States. Ms. Dassinger was a passenger of a vehicle unlawfully stopped by law enforcement officers. While stopped, she was under the control and authority of law enforcement officers who, in addition to the unlawful traffic stop, deprived Ms. Dassinger of her rights granted to her by the United States of America and the State of Louisiana.

2.     Defendant, Lafayette Consolidated Government("Defendant LCG"), is a municipality and political subdivision established pursuant to statutes and the Louisiana Constitution, which has the capacity to sue and be sued. Defendant LCG is authorized and acting pursuant to the laws of the State of Louisiana, which funds and maintains Lafayette Parish Sheriff's Office and employs the persons working there including Sheriff, Officers, or other persons in some capacity. All of the acts and conduct of its agents and employees complained of herein were under

color of state law and all of the acts and conducts of its agents and employees complained of herein are pursuant to policies and procedures and consistent with practices sanctioned by management/supervisory officials of Lafayette Consolidated Government. Defendant LCG is liable based on the acts and/or omissions of Defendants, LPSO, Garber, Miller, and Hiatt.

3.      Defendant, Lafayette Parish Sheriff's Office("Defendant LPSO"), is a political subdivision authorized and acting pursuant to the laws of the State of Louisiana, Lafayette Parish which funds and maintains LPSO and employs the persons working there including the Sheriff, officers, employees, agents, or others in some capacity. All of the acts and conduct of its agents and employees complained of herein under color of state law and all of the acts and conducts of its agents and employees complained of herein are pursuant to policies and procedures and consistent with practices sanctioned by management/supervisory officials of LPSO. Defendant LPSO is liable based on the acts and/or omissions of Defendants, Sheriff Garber, Miller, and Hiatt.

4.      Defendant, Lafayette Parish Sheriff, Mark Garber("Defendant Garber"), is an individual of the full age of majority and a domiciliary of the Parish of Lafayette and State of Louisiana. Defendant Garber is a citizen of the United States. At all times material to this original complaint, Defendant Garber was and remains the Lafayette Parish Sheriff. At the time the claims alleged in this Complaint arose, Defendant Garber was acting in his official and individual capacity as Sheriff of Lafayette Parish, Louisiana. Defendant Garber is a final "policymaker" for all purposes herein. Defendant Garber acted under the color of state law by virtue of his position as Sheriff of Lafayette Parish, Louisiana, and is a state actor under 42 U.S.C. § 1983. As Sheriff, Defendant Garber was responsible for hiring, training, supervision, discipline, and control of the LPSO staff and officers under his command, as well as the supervision, administration, policies, practices, customs, and operations of Defendant LPSO, and for ensuring that its officers,

employees, servants, and agents obey the laws of the State of Louisiana and the United States of America. Defendant Garber, in his official capacity, is vicariously liable for torts and civil rights violations committed by his officers in the course and scope of their employment under 42 U.S.C. § 1983.

5.      Defendant, Brennan Miller("Defendant Miller"), is an individual of the full age of majority and a domiciliary of the Parish of Lafayette and State of Louisiana. Defendant Miller is a citizen of the United States. At all times material to this original complaint, Defendant Miller was an officer of Defendant LPSO and under the command of Defendant Garber. Defendant Miller acted within the authority vested in him by virtue of employment with LPSO, and is a state actor under 42 U.S.C. §1983.Defendant Miller is sued in both his individual capacity, and in his capacity as officer for Defendant LPSO and his acts or omissions were conducted within the scope of his official duties or employment.

6.      Defendant, Michael Hiatt("Defendant Hiatt"), is an individual of the full age of majority and a domiciliary of the Parish of Lafayette and State of Louisiana. Defendant Hiatt is a citizen of the United States. At all times material to this original complaint, Defendant Hiatt was an officer of Defendant LPSO and under the command of Defendant Garber. Defendant Hiatt acted within the authority vested in him by virtue of employment with LPSO, and is a state actor under 42 U.S.C. §1983. Defendant Hiatt is sued in both his individual capacity, and in his capacity as officer for Defendant LPSO and his acts or omissions were conducted within the scope of his official duties or employment.

7.      Each Defendant herein may be considered a person and state actor within the meaning of 42 U.S.C. § 1983 in that actions and/or inactions complained of herein occurred under color of state law.

**JURISDICTION AND VENUE**

8.      Jurisdiction of this action is based upon 28 U.S.C. § 1331 and 1343 (a)(3) and (4) in that it is a civil action (a) that arises under the Constitution, laws or treaties of the United States; (b) that is authorized by law to be commenced by any person to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States; and (c) that it is an action to recover damages under 42 U.S.C. § 1983 for the deprivation of civil rights. The amount in controversy exceeds $75,000.00.

9.      Finally, the court may exercise supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367 in that these claims arise from a common nucleus of operative fact and are so interrelated that the Plaintiffs would ordinarily be required to try them in one judicial proceeding, and considerations of judicial economy, convenience, and fairness to all litigants dictate that the Court should exercise its discretion to hear supplemental claims.

10.     Venue in the Western District of Louisiana by reason of 28 U.S.C. § 1391, as it is the judicial district in which Defendants reside, as well as the judicial district where the acts or omissions complained of occurred in the Western District of Louisiana.

**FACTS**

Upon information and belief formed prior to the completion of discovery, Plaintiff alleges and states as follows:

**A.  Ms. Dassinger was a young mother traveling home with her family.**

11.     The factual allegations contained in the paragraphs previously cited herein are incorporated by reference.

12.     At the time of this incident, Ms. Dassinger was a 25 year old female who resided in Lafayette Parish in the State of Louisiana. She was married and a mother of one daughter. Ms.

Dassinger had a prior history of suffering from back injuries and allegedly suspected to have autism.

13.     At the time of this incident, Ms. Dassinger, Dominic Dassinger, and minor child, V.D. were traveling to their family home.

**B. Defendant Miller and/or Defendant Hiatt stop the Dassinger vehicle for alleged not fully functioning rear light.**

14.     On or around Friday, December 22, 2023, Defendant Miller and/or Defendant Hiatt, both officers of the Defendant LPSO stopped a white truck traveling on Renaud Drive in Lafayette Parish, Louisiana. Ms. Dassinger and her minor child, V.D., were passengers of the white truck("Dassinger vehicle") operated by Dominic Dassinger.

15.     The officers of the Lafayette Parish Sheriff's Office were Brennan Miller and Michael Hiatt.

16.     The Dassinger vehicle came to a stop in the Family Dollar parking lot bearing municipal address of 1061 Renaud Drive, Lafayette, LA 70507.

17.     It is alleged that when the Dassinger vehicle came to a stop in the parking lot of Family Dollar, Defendant Miller informed the vehicle occupants that they were pulled over due to having an alleged not fully functioning rear light.

18.     Ms. Dassinger has no independent recollection of receiving an explanation from either Defendant detailing exactly what was not fully functioning in terms of the rear lights of the Dassinger vehicle.

19.     It is alleged there as no probable cause to effectuate the traffic stop.

20.     It is alleged that Defendant Miller, requested to search the vehicle operated by Dominic Dassinger.

21.     It is alleged that Dominic Dassinger declined the search of the vehicle.

22.     It is alleged that at some point in the exchange, Defendant Michael Hiatt appeared outside of the Dassinger vehicle.

23.     It is alleged that Dominic Dassinger, Ms. Dassinger, and minor child, V.D. exited the Dassinger vehicle.

24.     It is alleged that Defendant Michael Hiatt and Ms. Dassinger exchanged words regarding the situation.

25.     It is alleged that Dominic Dassinger, Ms. Dassinger, and minor child, V.D., were instructed by Defendant Miller and/or Defendant Hiatt to stand at a distance.

**C.  Ms. Dassinger Cooperates Despite Defendants' Unlawful Detention of Ms. Dassinger.**

26.     Dominic Dassinger, Ms. Dassinger, and minor child, V.D. followed instructions of Defendant Miller and/or Defendant Hiatt by withdrawing from the Dassinger vehicle and relocating to another area of the Family Dollar parking lot.

27.     It is alleged that Defendant Hiatt stood in the physical proximity of Dominic Dassinger, Ms. Dassinger, and minor child, V.D.

28.     At the same time, it is alleged that Defendant Miller proceeded with a "sniff test" around the perimeter of the Dassinger vehicle. During this time, Defendant Miller and an LPSO canine circled the vehicle, performing the "sniff test."

**D.  Defendant(s) Needlessly Escalate the Situation with Shouting.**

29.     At the same time, Ms. Dassinger began to record a video of the sequence of events using her cellular device.

30.     It is alleged that Defendant Hiatt instructed Ms. Dassinger to put the cell phone away.

31.     It is alleged that Ms. Dassinger responded stating, "What are you going to do, you can't take it from me."

32.     It is alleged that Defendant Hiatt placed one or two hands on Ms. Dassinger in attempt to physically subdue Ms. Dassinger.

**E.  Defendants Unlawfully Detain and Assault Ms. Dassinger.**

33.     Without a warning and without establishing reasonable suspicion, let alone without establishing suspected reasonable belief that Ms. Dassinger committed an illegal crime, Defendant Hiatt responded by stating, "I can, you are detained right now, you are detained right now."

34.     It is alleged that Defendant Hiatt gave no basis for the unlawful detention of Ms. Dassinger.

35.     It is alleged that during this exchange, Defendant Hiatt placed his hands on Ms. Dassinger while she verbally protested.

36.     It is alleged that during this exchange, Defendant Hiatt, placed his hands on Ms. Dassinger and brought her body forcefully to the ground.

37.     It is alleged that Defendant Hiatt offered no basis for bringing her body to the ground and cuffing her arms.

38.     It is alleged that during this exchange, Ms. Dassinger justifiably protested and screamed for help.

39.     It is alleged that Defendant Hiatt pinned Ms. Dassinger to the ground.

40.     It is alleged that Defendant Hiatt took hold of the cell phone clutched by Ms. Dassinger.

41.     It is alleged that Defendant Hiatt stopped the cell phone in process of recording the incident.

42.     It is alleged that Defendant Hiatt, placed handcuffs on Ms. Dassinger while she lay on the ground.

43.     It is alleged that Dominic Dassinger informed Defendant Hiatt of Ms. Dassinger's back injury and possible autism, and that she should not be touched.

44.     It is alleged that Defendant Hiatt indicated that he would write Ms. Dassinger a ticket and relieve her of his physical restraint.

45.     It is alleged that Defendant Hiatt expressed to Ms. Dassinger that he was a good person.

**F.  Ms. Dassinger Received Treatment for Her Injuries.**

46.     On the date of this incident, Ms. Dassinger presented to Lafayette General Medical Center to obtain treatment for the injuries to her

47.     As a result of this incident, Ms. Dassinger suffered from back pain and right forearm pain.

## FIRST CLAIM FOR RELIEF
*42 U.S.C. § 1983 Fourth Amendment Violation- Unlawful Seizure and Detention*

48.     Ms. Dassinger incorporates by reference, as though fully set forth herein, each and every allegation contained in the preceding paragraphs of this Complaint.

49.     Ms. Dassinger did not, at any time during the law enforcement incident detailed herein, attempt to flee.

50.     Ms. Dassinger did not, at any time during the law enforcement incident detailed herein, pose a threat to Defendants.

51.     It is alleged that Ms. Dassinger complied with all requests until she was instructed to stop recording using her cellular device.

52.     Defendants had no information suggesting that Ms. Dassinger had committed, or was about to commit, a crime when Defendants detained and/or seized Ms. Dassinger.

53.     Despite lacking information or suspected reasonable belief that Ms. Dassinger had committed an illegal crime, Defendant Hiatt forcefully and physically detained Ms. Dassinger.

54.     Ms. Dassinger remained in approximately the same general location throughout the entire incident.

55.     Defendants completely lacked information that could have enabled the officers to have suspected reasonable belief that Ms. Dassinger committed an illegal crime.

56.     The Fourth Amendment of the U.S. Constitution protects citizens against unreasonable search and seizure by law enforcement officers.

57.     The Fourteenth Amendment of the U.S. Constitution protects citizens against arbitrary deprivation of life, liberty, or property by the State.

58.     It was clearly established at the time of Ms. Dassinger's detention that the Fourth and Fourteenth Amendments prohibit arrest and detention without probable cause or suspected reasonable belief that she committed an illegal crime.

59.     Defendants detained Ms. Dassinger without probable cause or suspected reasonable belief that she committed an illegal crime. The lack of probable cause or suspected reasonable belief of an illegal crime to detain Ms. Dassinger would have been evident to any reasonable person based on the facts and circumstances within Defendants' knowledge at the time. Defendants did not witness Ms. Dassinger break any law, nor did they have any reason to believe that she had broken any law.

60.     By detaining her without probable cause, Defendants violated Ms. Dassinger's clearly established Fourth and Fourteenth Amendment rights.

61.    Any reasonable officer would have known that detaining Ms. Dassinger under these circumstances would violate her clearly established constitutional rights.

62.    Defendants are not entitled to qualified immunity for their conduct, because their arrest of Ms. Dassinger violated Ms. Dassinger's clearly established constitutional rights and was objectively unreasonable.

63.    As a direct and proximate cause of the unlawful detention, Ms. Dassinger suffered actual physical, emotion, and economic harm.

64.    Ms. Dassinger is entitled to attorneys' fees and costs under 42 U.S.C. § 1988, prejudgment interest, and costs allowable by Federal law.

65.    Ms. Dassinger is also entitled to punitive damages against each Defendant under 42 U.S.C. § 1983 because Defendants' actions were malicious, willful, or with reckless or wanton disregard of Ms. Dassinger's constitutional rights.

66.    The intentional and/or reckless conduct of Defendants, acting under color of state law, deprived Plaintiff of the rights, privileges, liberties, and immunities, secured by the Constitution of the United States of America, made actionable pursuant to 42 U.S.C. 1983, including the unlawful detention and arrest, and which caused Plaintiff's loss of liberty, physical injury, and emotional/dignitary harms.

## SECOND CLAIM FOR RELIEF
### *42 U.S.C. § 1983 Fourth and Fourteenth Amendment Violations- Excessive Force*

67.    Ms. Dassinger incorporates by reference, as though fully set forth herein, each and every allegation contained in the preceding paragraphs of this Complaint.

68.    Defendant Hiatt took obvious offense to Ms. Dassinger recording the sniff test on her cellular device, which resulted in Defendant Hiatt telling Ms. Dassinger that she was detained.

69.     Defendant Hiatt abruptly and without warning, placed his hands on Ms. Dassinger, eventually pinning her to the ground with her arms behind her back.

70.     Ms. Dassinger remained completely under the physical control of Defendant Hiatt during this scenario.

71.     Defendant Hiatt wrenched both of Ms. Dassinger's arms behind her back, causing extreme pain and injury to her shoulders.

72.     Defendant Hiatt held Ms. Dassinger pinned to the ground.

73.     Defendant Hiatt had no basis for suspected reasonable belief of Ms. Dassinger committing an illegal crime, much less a violent crime that could possibly warrant such aggressive conduct.

74.     As a result of this incident, Ms. Dassinger suffered physical injuries.

75.     The Fourth Amendment of the U.S. Constitution protects citizens against unreasonable search and seizure by law enforcement officers.

76.     The Fourteenth Amendment of the U.S. Constitution protects citizens against arbitrary deprivation of life, liberty, or property by the state.

77.     It was clearly established at the time of Ms. Dassinger's detention that the Fourth and Fourteenth Amendments prohibit law enforcement officers from using an unreasonable level of force.

78.     By forcing Ms. Dassinger to the ground, physically subduing Ms. Dassinger, and pinning Ms. Dassinger down without explanation, Defendants violated Ms. Dassinger's clearly established Fourth and Fourteenth Amendment rights.

79.     The level of force used by Defendants against Ms. Dassinger was objectively unreasonable because: (a) Ms. Dassinger was not accused of traffic violation, much less an illegal

crime; (b) Ms. Dassinger was a mere passenger at this traffic stop and observing the sniff test from a distance; (c) Ms. Dassinger did not interfere with the alleged traffic stop and attempted sniff test; and (d) Ms. Dassinger objectively posed no threat to Defendants, herself, or anyone else at any point during this traffic stop. At most, Ms. Dassinger resisted Defendants' illegal use of excessive force with a level of resistance permitted by state law.

80.    Any reasonable law enforcement officer would have known that using this level of force to arrest Ms. Dassinger would violate her clearly established constitutional rights.

81.    Defendants are not entitled to qualified immunity for their conduct, because their use of force against Ms. Dassinger violated Ms. Dassinger's clearly established constitutional rights and was objectively unreasonable.

82.    As a direct and proximate result of Defendants' excessive force, Ms. Dassinger suffered actual physical, emotional, and economic harm.

83.    Ms. Dassinger is entitled to attorneys' fees and costs under 42 U.S.C. §1988, prejudgment interest, and costs allowable by federal law.

84.    Ms. Dassinger is also entitled to punitive damages against each Defendant under 42 U.S.C. § 1983 because Defendants' actions were malicious, willful, or with reckless or wanton disregard of Ms. Dassinger's constitutional rights.

85.    The actions described herein of Defendants, while acting under color of state law, deprived Plaintiff of the rights, privileges, liberties, and immunities, secured by the Constitution of the United States of America, made actionable pursuant to 42 U.S.C. § 1983, including the right to be free from unreasonable seizure.

86.    Defendants' conduct was the motivating and proximate cause of Plaintiff's injuries, including physical, emotional, economic, and dignitary harms.

### THIRD CLAIM FOR RELIEF
*42 U.S.C. § 1983 First and Fourth Amendment Violations- Retaliation and Unlawful Seizure*

87.     Ms. Dassinger incorporates by reference, as though fully set forth herein, each and every allegation contained in the preceding paragraphs of this Complaint.

88.     The Fourth Amendment of the U.S. Constitution protects citizens against unlawful seizure of their person or property by law enforcement officers.

89.     It was clearly established at the time of Ms. Dassinger's arrest that the Fourth Amendment prohibits law enforcement officers seizing a citizen's vehicle without legal justification.

90.     Because Defendants had no probable cause to believe that Ms. Dassinger had broken any law, they had no basis to seize Ms. Dassinger or her personal property. By doing so, Defendants violated Ms. Dassinger's clearly established Fourth Amendment rights.

91.     Any reasonable law enforcement officer would have known that seizing Ms. Dassinger and her property in this context would violate her clearly established constitutional rights.

92.     Defendants are not entitled to qualified immunity for their conduct, because seizure of Ms. Dassinger and her property violated Ms. Dassinger's clearly established constitutional rights and was objectively unreasonable.

93.     As a direct and proximate result Defendants' unlawful seizure, Ms. Dassinger suffered actual emotional, physical, and economic harm.

94.     Ms. Dassinger is entitled to attorneys' fees and costs under 42 U.S.C. § 1988, prejudgment interest, and costs allowable by federal law.

95.    Ms. Dassinger is also entitled to punitive damages against each Defendant under 42 U.S.C. § 1983 because Defendants' actions were malicious, willful, or with reckless or wanton disregard of Ms. Dassinger's constitutional rights.

96.    The First Amendment of the U.S. Constitution protects the rights of citizens to engage in certain constitutionally protected activity. Recording interactions with police is one example of protected activity.

97.    It was clearly established at the time of the incident that recording an interaction with police is a protected activity, and that the First Amendment prohibits law enforcement officers from retaliating against a citizen engaging in that activity.

98.    At the time of the incident, Ms. Dassinger had a clearly established constitutional right under the First Amendment to record her interaction with Defendants.

99.    Defendant Hiatt physically detained Ms. Dassinger, culminating in pinning her to the ground, taking her cellular device, and stopping the cellular device from recording. In doing so, Defendant Hiatt violated Ms. Dassinger's clearly established First Amendment rights.

100.    Defendant Hiatt's actions would chill a person of ordinary firmness from continuing to record an interaction with the police. Moreover, Defendant Hiatt's actions were substantially motivated against Ms. Dassinger's exercise of his constitutional right to record the interaction.

101.    Any reasonable law enforcement officer would have known that this conduct would violate Ms. Dassinger's clearly established constitutional rights.

102.    Defendant Hiatt is not entitled to qualified immunity for his conduct, because his retaliation against Ms. Dassinger violated Ms. Dassinger's clearly established constitutional rights and was objectively unreasonable.

103.     As a direct and proximate result of Defendant Hiatt's retaliation, Ms. Dassinger suffered actual emotional harm.

104.     Ms. Dassinger is entitled to attorneys' fees and costs under 42 U.S.C. § 1988, prejudgment interest, and costs allowable by federal law.

105.     Ms. Dassinger is also entitled to punitive damages against Defendants Hiatt and Miller under 42 U.S.C. § 1983 because Defendant's actions were malicious, willful, or with reckless or wanton disregard of Ms. Dassinger's constitutional rights.

## FOURTH CLAIM FOR RELIEF
### *42 U.S.C. § 1983 First and Fourth Amendment Violation- Retaliation*

106.     Ms. Dassinger incorporates by reference, as though fully set forth herein, each and every allegation contained in the preceding paragraphs of this Complaint.

107.     At the time Defendant Hiatt physically seized and detained Ms. Dassinger, she had committed no crime. She had merely exercised her right to record the interaction on her cellular device.

108.     In response to Ms. Dassinger exercising her constitutional right, Defendant Hiatt physically subdued Ms. Dassinger and pinned her to the ground, following by stopping the cellular device recording.

109.     Defendants caused Plaintiff injury that would chill a person of ordinary firmness from exercising her First and Fourth and Amendment rights. As a result of this incident, Plaintiff suffered physical, emotional, economic, and dignitary injuries. Plaintiff was treated at a local hospital. Plaintiff has lost confidence in her ability to assert the rights guaranteed to her by the Constitution of the United States of America. Plaintiff continues to fear police interaction and further fears that she may not be able to assert her right in the future.

110.    Such actions by Defendants, while acting under color of state law, deprived Plaintiff of the rights, privileges, liberties, and immunities secured by the Constitution of the United States of America, including the right to remain silent and the right to be free from unreasonable seizure.

### FIFTH CLAIM FOR RELIEF
*42 U.S.C. § 1983 Supervisory Claims*

111.    Ms. Dassinger incorporates by reference, as though fully set forth herein, each and every allegation contained in the preceding paragraphs of this Complaint.

112.    Defendant Garber, as Sheriff, was at all times relevant hereto responsible for creating, adopting, approving, ratifying, and enforcing the rules, regulations, policies, practices, procedures, and/or customs of the officers, employees, and agents of Defendant, LPSO, which include the policies, procedures, and/or customers that violated Ms. Dassinger's rights.

113.    Defendant administrative and supervisory personnel were charges with the selection, assignment, supervision, and training of officers and employees of LPSO.

114.    Defendant Garber was employed by LPSO and held positions that were supervisory over the other Defendants named herein at the time of the acts and omissions amounting to the constitutional deprivations suffered by Ms. Dassinger.

115.    Defendant Garber had a duty to ensure that subordinate staff members were carrying out their duties and responsibilities and had a duty to prevent those subordinate staff members from violating the constitutional rights of citizens as well as a duty to act when constitutional deprivations became evident.

116.    Defendant Garber either directly participated in and/or directed subordinate defendants to act in a manner violating Ms. Dassinger's constitutional rights and/or had knowledge of and acquiesces to his subordinates' unlawful conduct.

117.     Defendant Garber failed to properly train and provide adequate policies, procedures, and training to their employees and subordinates ,and they failed to instruct and direct them to adequately.

118.     The customs, policies, and/or practices of Defendants were the direct legal and proximate cause of Ms. Dassinger's injuries. Defendant Garber's failure to adequately train and supervise their employees and/or agents to prevent the occurrence of the Constitutional violations, which resulted in Ms. Dassinger's injuries. Defendant failed to propagate appropriate policies or procedures or take other measures in order to prevent this incident.

119.     As a direct and proximate result of the aforementioned acts and omissions of Defendants, Ms. Dassinger suffered physical and emotional damages due to the deprivation of her Constitutional rights.

### SIXTH CLAIM FOR RELIEF
*42 U.S.C. § 1983 Monell Claim Against Governments and Agencies*

120.     Ms. Dassinger incorporates by reference, as though fully set forth herein, each and every allegation contained in the preceding paragraphs of this Complaint.

121.     The actions and/or inactions of Defendants, Garber, Miller, and/or Hiatt, as set forth in the paragraphs above and below, were taken in their official capacities. As a result, LCG is a proper Defendant herein.

122.     The violations of Ms. Dassinger's constitutional rights as described herein were caused in whole or in part by the customs, policies, and/or practices of LCG and LPSO, as promulgated, disseminated, ratified, and/or enforced by Defendants named herein. The institutional and official Defendants charged with ensuring adequate law enforcement policies and procedures to citizens completely failed to provide basic Constitutional Rights in comportment with the standards and principles of a civilized and lawful society.

123.    The development, maintenance, ratification, and/or tolerance of the customs or policies or lack thereof and/or the failure to train and/or supervise was the moving force behind the Constitutional violations committed against Ms. Dassinger as set forth elsewhere in this Original Complaint.

124.    The acts and omissions by Defendant Garber, Defendant Miller, and Defendant Hiatt in their official capacities occurred as a direct result of the policies, customs, practices, and procedures created or ratified or tacitly approved by Defendant Garber (as Sheriff of LPSO for LCG), in their policy making and/or supervisory official capacity. The conduct, in the aggregate, amounted to deliberate indifference for, not only Ms. Dassinger's Constitutional rights, but for the similar rights of other citizens who have fallen victim to similar or the same practices.

125.    The conduct of named-Defendants acting in supervisory official capacities over LPSO either created the customs or policies under which the above-described unconstitutional practices occurred, or allowed such customer or policies to continue. The establishment and continuation of said customs or policies facilitated a substantial risk of serious harm or injury to Ms. Dassinger and resulted in such.

126.    The Defendants who acted in a supervisory official capacity were grossly negligent in managing, supervising, and training the subordinates who caused or contributed to the unlawful events.

127.    The institutional and official Defendants violated the well-established Constitutional rights of Ms. Dassinger, of which a reasonable person would have known.

128.    As a direct and proximate cause of the above-described violations of Ms. Dassinger's Constitutional rights, Ms. Dassinger suffered the injuries described herein.

## SEVENTH CLAIM FOR RELIEF
### *Louisiana State Law- Excessive Force and Battery*

129.    Ms. Dassinger incorporates by reference, as though fully set forth herein, each and every allegation contained in the preceding paragraphs of this Complaint.

130.    Defendants used an unreasonable and unnecessary amount of force when arresting Ms. Dassinger. Defendants pinned Ms. Dassinger to the ground and applied extreme pressure to her back, legs, and throat with their elbows, knees, and arms. Based on the totality of facts and circumstances presented, and compared with the force that any ordinary, prudent, and reasonable person would have considered necessary, this amount of force was objectively excessive.

131.    Defendants had no reason to believe that Ms. Dassinger would become violent or was in any way a danger to them.

132.    Ms. Dassinger never tried to flee from the parking lot where the Dassinger vehicle was undergoing the sniff search by Defendant Miller and LPSO canine.

133.    Defendants did not face any danger from anyone else nearby.

134.    Defendants are larger and stronger than Ms. Dassinger and were equipped with weapons such as pistols, tasers, police dogs, and a plethora of additional professional police devices and resources.

135.    Ms. Dassinger was not accused of an illegal crime, not even a traffic violation. There was no need to arrest Ms. Dassinger at all, much less to employ such a severe level of force to do so.

136.    As a direct and proximate result of Defendants' excessive force, Ms. Dassinger suffered actual physical, emotional, and economic harm.

## EIGHTH CLAIM FOR RELIEF
### *Louisiana State Law- Intentional Infliction of Emotion Distress*

137.    Ms. Dassinger incorporates by reference, as though fully set forth herein, each and every allegation contained in the preceding paragraphs of this Complaint.

138.    Defendants' conduct, including the excessive force used on Ms. Dassinger during her detention and the decision to ticket her with a misdemeanor despite the lack of probable cause, was extreme and outrageous.

139.    Defendants intended that their conduct would cause Ms. Dassinger severe emotional distress, or knew that their conduct was certain or substantially certain to cause Ms. D

140.    As a direct and proximate result of Defendants' conduct, Ms. Dassinger suffered actual emotional, physical, and economic harm.

## NINTH CLAIM FOR RELIEF
### *Louisiana State Law- Negligent Infliction of Emotion Distress*

141.    Ms. Dassinger incorporates by reference, as though fully set forth herein, each and every allegation contained in the preceding paragraphs of this Complaint.

142.    Each Defendant owed a duty to Ms. Dassinger to stop the other officer from using an excessive amount of force on Ms. Dassinger in his presence or otherwise within his knowledge. Additionally, Defendants were duty bound to choose a course of action which was reasonable under the circumstances.

143.    Defendants breached those duties.

144.    Defendants' breach of their duty was a cause-in-fact of Ms. Dassinger's severe emotional distress.

145.     As a direct and proximate result of Defendants' conduct, Ms. Dassinger suffered actual emotional and economic harm.

## TENTH CLAIM FOR RELIEF
### *Louisiana State Law- Assault*

146.     Ms. Dassinger incorporates by reference, as though fully set forth herein, each and every allegation contained in the preceding paragraphs of this Complaint.

147.     Defendants deployed violence upon Ms. Dassinger, specifically by grabbing and manhandling Ms. Dassinger, in response to Ms. Dassinger making a video recording of the stop of the Dassinger vehicle.

148.     Defendants had the ability to carry out these violent acts. Ms. Dassinger was therefore placed in reasonable apprehension of receiving injury.

149.     An ordinary, prudent, and reasonable person in the same position as Defendant Hiatt would not have made these threats of violence against Ms. Dassinger.

150.     As a direct and proximate result of this assault, Ms. Dassinger suffered actual emotional and economic harm.

## JURY DEMAND

151.     Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff respectfully requests that this action be tried by a Jury.

## PRAYER

152.     Incorporating all averments above, Plaintiff prays for judgment against the Defendants for the following:

    a.   Actual, compensatory, and consequential damages;

    b.   Punitive damages against the appropriate Defendants as authorized by law;

    c.   Attorneys' fees;

    d.  Pre and post-judgment interest;

    e.  Cost of suit; and

    f.  Any and all such other further damages and relief both, at law and in equity, that may be justly awarded.

WHEREFORE, Plaintiff demands judgment against the above-named Defendants on these Claims, together with actual, compensatory, and punitive damages, and for any such further relief as the Court deems proper and just.

**CERTIFICATE OF SERVICE**

      I hereby certify that the foregoing pleading has been delivered to all counsel of record, by depositing a copy of the same in the United States mail, first class postage prepaid, by hand delivery, electronic mail, and/or by facsimile transmission, this 20th day of December 2024, at their last known address of record.

*s/ Johnae Jefcoat-Broussard*
**JOHNAE JEFCOAT-BROUSSARD**

Respectfully Submitted,

**GALLOWAY JEFCOAT, LLP**

*s/ Johnae Jefcoat-Broussard*
**JOHN JEFCOAT (#24130)**
**JOHNAE JEFCOAT-BROUSSARD (#39486)**
1925 Dulles Dr.
Lafayette, LA 70596-1550
Tel: 337-984-8020
Fax: 337-984-7011
Email: JohnJ@GallowayJefcoat.com
      JohnaeJ@GallowayJefcoat.com
***Counsel for Plaintiff, BETHANY DASSINGER***